Good morning. I'm John Ward here on behalf of Mr. Brown, and I have to confess I'm longing for the days of lachies, but here we are. Mr. Brown, I'm sorry, Mr. West was pro se in the district court, and this court appointed me to represent him here on appeal. The magistrate in findings adopted by the district judge found that Mr. West's state court petition became final on April 25, 1999, so that under AEDPA the statute would have run a year later, April 25, 2000. On May 11, 2000, Mr. West started his upward descent up the ladder in state court. Upward ascent. Ascent, yes. Did I say descent? I'm sorry.  And he filed, after he finally concluded his proceedings in the California Supreme Court, in August of 2002, 2001, I'm sorry, he filed a petition to the California Supreme Court. He, within the period that would have been remaining to him, had there been gap tolling, filed a petition. So the question before this Court is what do we make of these three weeks between April of 2000 and May of 2000? No, April 99. Well. No, 2005. Well, April 25, 2000 is the expiration of the one-year limitations. Of the one year, right. Arguably. Arguably. All right. Okay. Our position is that there's two reasons why the district court erred. You concede that nothing happened during that one year that's relevant here. Well, something did happen that's in the sense that our position is twofold. First of all, that on this record, his position, his federal petition was timely because in September of 99, he discovered the factual basis. Maybe I should back up a little bit and remind the Court of why this case is a little bit unusual. This was a guilty plea in state court. The magistrate apparently proceeded under the assumption that the rules applicable in the case of direct appeal applied. Now, nobody, it appears to me that, and counsel for respondent can correct me if I'm wrong, that's really not the case. This appears to be one of those cases where the statute begins to run when Mr. West reasonably should have discovered the factual basis for his claim. And that is so because his claim is one of ineffective assistance of counsel. And the ineffective assistance of counsel does not appear on the face of the record. But wasn't there some knowledge about potential mental incompetency at the time of the plea and all of that? Well, I mean, I think actually, Your Honor, that becomes sort of a hall of mirrors. I mean, the claim is that there was a dim cap defense and that he was incompetent to plead guilty. Okay. Now, if indeed that's so, how is he to know? I mean, number one. And secondly, under Hassan v. Galazza, you have to have two things. First of all, we know that counsel didn't do anything, okay, part one. But part two, there has to be some evidence to support a good faith showing that the second prong of Strickland applies, that there's prejudice. And it's our position that that part of the Strickland claim arrived when Mr. West received the report in September of 99 from Dr. Heises. I believe her name is, saying that he was psychotic at the time of the offense. He may have been psychotic later, and so forth and so on. That doesn't establish a diminished capacity defense in California since 1982. Well, diminished actuality, Your Honor. I mean, and I think that may be so, but that's a substantive matter. I think here we're. Well, it's a pretty important substantive matter. Diminished capacity. He's saying I didn't get effective assistance of counsel because he didn't plead diminished capacity. And the people voted diminished capacity out in 1982 when Section 25 of the penal code was adopted. He might as well say I didn't get the defense that I was on steroids. Well, I, with all respect, Your Honor, I disagree to the extent that diminished capacity went out one door and diminished actuality came in the other. And I think on the basis of this, he could have claimed, as defendants claim all the time, as I'm sure you know as to your report, that he actually. I'm sorry? His claim is I wasn't allowed to plead diminished capacity. There's not a word about diminished actuality, whatever that is. petitioner filing a pro se petition, and I think liberally construed, it can certainly support the claim that he had a mental defense. He also, in addition, had a defense that he was incompetent to plead guilty based on his mental condition at the time. So that's part one. The second reason why we believe the district court erred is because in his objections to the magistrate's findings and objections, he asked that the court look into the matter of equitable tolling. Now, in March of 2000, when he still had time under the strictest construction of AEDPA, he was hospitalized for a period of a month for a suicide attempt, and he was in the acute care facility of the state prison hospital at Corcoran. On that basis, before dismissing the case, the magistrate should have held an evidentiary hearing under laws concerning the issue of equitable tolling. So in summary, our position is, A, his position was timely under Hassan v. Galazza because the information needed to file an IAC claim came to him only in September of 1999, and even if the court disagrees with that, at a minimum, there certainly should have been a hearing, an evidentiary hearing on the issue of equitable tolling. How do you surmount the fact that Dr. Pazaz, however you pronounce her name, Cheryl Pazaz, is a different time period from the one-year time period during which AEDPA was ticking? I'm not sure I can ---- Her report was dated ---- April of 99. Right. But it did not encompass the entire period during which he could have filed a petition. Does that go to the timeliness or the equitable tolling? Well, it goes to the fact that she dealt with his mental condition at a time period different than the ticking of the clock. Well, except that she said that he was psychotic. At a different time period. But, well, but she was not asked to address the issue of his competence. She was not asked to address ---- she was asked to address only his psychiatric condition at the time of the offense. What I'm saying is you can't just say my lawyer didn't, as Judge Baez said, you know, my lawyer didn't raise that I was on steroids, or my lawyer didn't raise that equal protection. You know, there has to be something that brings you both something that counsel didn't do and something that counsel should have done. I think in a mental case, in a case where the defense is a mental defense, you have to have something to indicate to the court in your petition that there's a good-faith basis, that there's an arguable basis for saying there was ---- it was not correct, it was not according to law for me to have, A, pleaded guilty or, B, be convicted on the basis of intent to kill when there were arguably reasons why I did not actually form that intent. And that's the piece of information that could be teased out of the Paisa's letter. And that's the question that the district court should have decided when it got to the substance. What we're saying is that they hit the send key too fast and just dismissed this on procedural grounds when that ---- you know, I mean, who knows what would happen with this substantive claim? I don't know. And fortunately, I don't have to ---- Well, the Paisa's letter dealt with the substantive claim, didn't it? Well, it's ---- It didn't deal with the ---- whether he was confident to file a petition during the running of the clock. Well, no. But, however, we do have other evidence in the petition, not controverted by anybody, that he wasn't. In fact, he was in the psychiatric hospital for a month during the period when the clock was running because he had made a serious suicide attempt. So, I mean, somebody should have looked into that. Counsel, you've got less than a minute. Okay. Why don't I reserve that for you? Okay. Very good. Thank you. We'll hear from the State. Mr. Eldridge. Yes, David Ender Eldridge, Deputy Attorney General for Appellee. As I understand the claim, well, actually, the counsel suggested that there's a question as to which statutory trigger is implicated here. Actually, since it's always the latest of, they always all apply, it's just a question of which was latest. So it's clear that the trigger, the period that would have started from the expiration of the time for appeal started in April of 99 and ended in April of 2000. That was what was asserted in the ---- I think he agrees that it started April 25th, 99, but on September 11th, 99, something ---- Right. So then we're talking ---- Started a tolling. Right. So he would be untimely under the first one, standing alone. His claim is that under Subdivision D1D, I believe, of 2244, he would be timely. That's a later trigger date and, therefore, that he is timely. And the claim, which the theory in part is sound, which is until I had reason to know I was prejudiced, I had no reason to know that I had been denied legally effective counsel. What he has to show, not merely assert as a conclusion, is that I was justifiably ignorant, i.e., both ignorant and had reason to be ignorant of the prejudice up until September 11th. We already know that he actually requested the report in August of 99 by his own admission. He says that in his assertions to the district court. So he didn't become aware in September of the existence of a report. Rather, counsel informed him in August of 99 that he had the reports, both of them, and then he requested a copy. What's also ---- What difference does that make? Well, he's actually ---- he needs to be able to show that he was justifiably ignorant up until August 23rd of 99. If he had reason to know, if he could have found out through due diligence the factual basis of his claims, say, as of August 22, he's untimely even under subdivision D1D. So he has to show that up until August 23rd of 99, I just couldn't possibly have known through due diligence. Well, the problem is he really could have, even assuming as true that he didn't know up until that date. He certainly knew that as of the time he pled, and he pled in February of 2000, I'm sorry, February of 1999. He knew he'd been interviewed several times, and he was even interviewed the day after he pled. Any person who knows they've pled after all this investigation into the mental state, assuming that actually shows deficiency of counsel, which is what's being claimed, that those facts standing alone do show deficiency of counsel, which I'm not sure I agree with, but even assuming they do, anyone reasonably would start to inquire, well, was I prejudiced by what is already shown to me to be deficiency of counsel? And so at that point, all he had to do, he could have asked the doctor the very next day, well, when is the report coming out, do you think I'm crazy? He could have asked counsel, what happened? Why didn't any of this come out at the time of the plea? What happened? And there's no showing, for example, that counsel didn't know what the doctor's conclusions were. So all he had to do was ask counsel, what were the conclusions? He asked counsel that if at the time of the plea, this is a, he's chasing his tail here, this is a catch-22. If he was crazy, legally incompetent at the time the plea was entered, how could he be competent to know that his counsel was ineffective for not pleading that he's not guilty by reason of mental defect? Okay, you've got it. Assume that the man is incompetent. If he is incompetent, make an assumption, then he can't be competent to know that his attorney is giving him ineffective assistance, can he? You are, you're actually talking about a legal claim versus a factual basis. Assuming, as you suggested, that he is incompetent at that time, that doesn't mean he's unaware of the facts. And the statute relies only on the factual basis, not whether he has a legal acumen. He's aware that he's a lie, but he does not know that his counsel is ineffective for not raising the fact that he is incompetent. If you are, if you are asserting that he doesn't know the facts, which might lead someone to conclude he, that, that counsel's ineffective assistance. He knows his counsel is not pleading not guilty by reason of insanity. He knows that. Yes. But he is himself incompetent to realize that this is ineffective assistance of counsel because he himself is incompetent. That's what, that's what the petitioner's position is. Okay, but the statute does not operate from that. The statute operates from the date of his factual basis. And let me say also that the district court would have had a clear basis for rejecting the premise of your assertion. There is in the record itself his speech, which he gave at the time of sentencing, in which he explains perfectly clearly, I know why I'm here. I'm glad you took the death penalty off the table. I'm certainly glad that I don't have to drag those poor kids through this trial. So the record itself refutes on the merits of the claim of incompetence, which sadly gets sort of intermingled with the procedural question whether he's untimely. But it's certainly evidence from which the district court could have concluded that any argument conceding from a factual basis. That goes to the merits of the petition. We're dealing with the procedure at this point. But the evidence that informs that procedural question, it happens to also show it's meritless. But it does inform the procedural question because it doesn't stop being evidence just because it goes to the merits as well. So if he is factually asserting the reason I couldn't have known is because I was in fact incompetent, the court can reject the claim that he didn't know because, in fact, he was competent. Granted, that also tends to resolve the merits of the incompetence claim. But that aside, it also resolves the procedural question because if, in fact, he was competent, he has no factual basis to claim that my incompetence prevented me from knowing earlier. I recognize it's kind of thorny. But the evidence, I mean, in a way that was a little frustrating because he's so clearly competent that it's kind of annoying dealing with the procedural question, but it's there. So I guess I'll just try to sort of wrap up. Well, let me just make sure I understand what you're saying. The EDPA D1A period arguably started on April 25th, 1999. Well, yeah, there's no question that it started on that date because on that date, the time for seeking for. It starts the period. It starts the statute. That would start that period, yes. All right. You mentioned something about August 23, 1999. That is the date which that is the last date. If he has to claim that he was even under the later, it's always the later of the periods which governs the petition. Actually, some are claim specific, so it might go claim by claim. But he's claiming that because of the discovery subdivision, it's still timely, notwithstanding the fact that it wouldn't be timely under the first period of limitation. It's always the latest. D sort of trumps the D1A in terms of counting. It's not really a trump. He's timely if he comes within the latest. There are four triggers, and he's timely if he comes within the latest of them. So I don't know if trump is really the word. It's simply he's timely if he meets any one of those, although some are claim specific. So on the factual basis here, he did not demonstrate to the court below that he could not have discovered these things, say, before as of August 22. There's simply no reason for him to. At the time he actually made the request of counsel for the record, he still wasn't even inquiring. He had called counsel because, according to him, counsel said he was going to get him a television. And he was calling about that, and this just happened to come up. So he wasn't doing any investigation. He wasn't diligently looking into whether he had been prejudiced by the fact that everyone agrees he already knew, i.e., that counsel had or had not done X, Y, Z. He wasn't in any, certainly, I could see that if counsel had been appointed on the date after the plea, then counsel would have immediately started looking into this record as to whether this guy was prejudiced by what he argues was clearly deficiency of counsel. He didn't do that, or Appellant didn't do that. He just sat around and he thought about his television, and then he just happened to look into some of this stuff. Thank you. Thank you, counsel. Mr. Ward, you have a little bit of reserve time. Very briefly. First of all, regardless whether September 11th, per se, is the day, it seems to me that it's clear that on this record there was enough time after April 25th to give him the two weeks that he needed under the most strict construction of AEDPA. My second point is that on this record, it cries out, if the Court does not agree with me that we can find timeliness based on this record, it certainly cries out for an evidentiary hearing on that point. I mean, the magistrate's decision did not talk about, it simply made an assumption that by mechanically applying the dates we can dismiss this petition, where there's clearly evidence that some fact came along that did he know, did he know? This is the kind of thing that we do at evidentiary hearings, not in appellate court. So, therefore, either I would say reverse and say that it's timely and go to the merits or remand for an evidentiary hearing either on timeliness or on the issue of equitable tolling. Thank you very much. Thank you, Mr. Ward. The case just argued will be submitted for decision. And we will now hear argument in Nagrampa v. Mail Coops, Inc. Ms. Gordon. Thank you.
judges: O'scannlain, Cowen, Bea